*Bann & Goodloe, Humprheys, for appellee.*

----

WILLIAM TURNER *v.* D. C. TABB, TRUSTEE, ET AL.

Evidence—Entry on Books Made by Employee.
  Entries by an employee made on the books kept by him can be used to establish a liability for an increase in salary given him by his employer.

Master and Servant—Employer and Employee.
  An employer is liable under a parol agreement for an increase in salary of his employee, where his books show the entry made thereon by the employee, and not objected to by him.

Same—Due Care in Acts of Employee.
  A manager of a business, who negligently or by lack of due care, permits one of his sub-employees to overdraw his wages, is personally liable to the employer for same.

APPEAL FROM LOUISVILLE CHANCERY COURT.

August 18, 1870.

OPINION OF THE COURT BY JUDGE WILLIAMS:

G. B. Tabb being a merchant of Louisville, employed appellant as his clerk in February, 1861, at the fixed salary of $1,250 per

year. Appellant so continued as clerk under Tabb's supervision until in April, 1863, when Tabb having become obnoxious to the military authorities, then commanding Louisville, he was by their orders sent through their military lines to the Confederacy.

Preparatory to leaving, G. B. Tabb, April 29, 1863, conveyed his property, merchantable stock, &c., to his brother, D. C. Tabb, in trust for his mother, both of whom resided in West Virginia, and left the store under the control of Turner.

In 1864 and 1865, Turner wrote various letters to G. B. Tabb insisting on an increase of wages, as those agreed on were inadequate. There is no response to these letters found in the record.

D. C. Tabb seems to have been at Louisville on only one occasion during the whole time which Turner controlled the mercantile house.

G. B. Tabb got permission to return to his relatives in West Virginia and Maryland, where he continued to reside until his return to Louisville in the year 1866, where he resided until his death in June, 1867, and controlled the business house in the mean time.

Turner sued the trustee, D. C. Tabb, for salaries, fixing those of 1863 at $1,500, 1864 $2,500, and from June 3, 1867, to January 1, 1868, at the rates of $2,500. As to the other period there is no controversy, but as to these the trustee insists he is only liable for $1,250 for 1863, $1,500 for 1864, and at the rates of $2,000 from June 3, 1867, to January 1, 1868.

The character of the correspondence between Turner and G. B. Tabb, his taking control of the business after his return to Louisville, the entire absence of correspondence by D. C. Tabb, and non-interference during all this time with the management of the business, leave but little room to doubt that G. B. Tabb was the recognized managing agent on the part of the trustee, if indeed the property was really not held in secret trust for him, at least during his life. The original contract price of the amount of Turner's salary is not doubtful, but whether afterwards an advance was not agreed on, is more problematical. In some of Turner's letters to G. B. Tabb his intention to quit unless an increase of salary was allowed is made clear and distinct.

It is proved by C. F. Turner that after G. B. Tabb returned to Louisville the following entries to Mr. Turner's credit were made on the books, by him, by the direction of said Tabb and per his agreement with Mr. Turner:

From February 15 to December 31, 1861, 10½ months..$1,093.75
For 1862 ................................... 1,250.00
For 1863 ................................... 1,500.00
For 1864 ................................... 2,500.00
For 1865 ................................... 2,500.00

The profits made by William Turner in the management of the business, the previous claim for increased wages together with future services may all have entered into the consideration for this agreed increase for past as well as future services.

Although there are some apparent discrepancies in C. F. Turner's statements, yet as considerable periods of time had elapsed, and his attention was not directed to these for explanation, and inasmuch as a reasonably liberal construction would make them substantially harmonize, and as no other attack upon his credibility has been made, his evidence should not be disregarded because of these things. We think, therefore, that the charges and entries as found upon the books and so established by C. F. Turner, should be allowed.

But as C. F. Turner was allowed to overdraw his wages and is probably insolvent and this was through the want of due care by William Turner whilst he had the control and management of the establishment, he should be held responsible therefor, and this amount should be deducted from the sum found to be due him for services.

We agree with the chancellor as to the remaining questions, and find only these errors in his judgment.

Wherefore, the judgment is reversed, with directions for further proceedings in accordance with this opinion.

*Gazlay, for appellant.*

*Bullitt, for appellees.*